UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

CITY OF WAUKESHA,

        Plaintiff,

        v.                                                  Case No. 01-C-0872

VIACOM INTERNATIONAL INC.,
and A.W. HOLDING CORP.,

        Defendants.

_____

## ORDER

Plaintiff City of Waukesha ("City") moves for leave to file a proposed Sixth Amended Complaint to add a CERCLA contribution claim under § 113(f)(3)(B) and to add Geneve Corporation and insurance carriers as parties. Defendant Viacom International Inc. ("Viacom") moves for a stay of this action pending completion of a state process that the City has initiated under Wis. Stat. § 292.35. For the reasons stated below, the court grants in part and denies in part the City's motion for leave to file a proposed Sixth Amended Complaint and denies Viacom's motion for a stay.

## BACKGROUND

The operative version of the City's complaint in this action is the "Revised Proposed Third Amended Complaint," which is attached to the City's August 8, 2002 reply memorandum [docket #80]. The court granted the City's motion for

leave to file a proposed Third Amended Complaint on September 24, 2002. (*See* Sept. 24, 2002 order at 9-14.)

On May 7, 2004, the City filed a motion for leave to file a proposed Fourth Amended Complaint to add two of A.W. Holding Corp.'s insurance carriers as parties. Shortly thereafter, on July 26, 2004, the City filed a motion for leave to file a proposed Fifth Amended Complaint to add a third insurance carrier as a party. The City also sought to add Geneve Corporation as a defendant:

> Discovery recently received from Amron, L.L.C., including 1996 environmental documents and a stipulation of facts, have established a basis for a direct claim by the City against Geneve.

(City's July 26, 2004 motion, ¶ 8.) The City argued that adding Geneve as a defendant would not be futile because the court should pierce the corporate veil of Geneve, parent and sole shareholder of Amron Corporation (renamed A.W. Holding after the 1996 asset sale), to hold Geneve liable for damages the City may recover against A.W. Holding. (*See* City's July 26, 2004 motion at 6-11.) Geneve opposed the City's motion primarily because the proposed complaint allegedly does not state a proper piercing the corporate veil claim, but Geneve also argued that the City unduly delayed in asserting a direct claim against Geneve. (*See* Geneve's September 7, 2004 brief, 4-14.) During a September 17, 2004 hearing, the court ordered the City to file a supplemental memorandum in

support of its motion for leave to file a Fifth Amended Complaint; specifically, the court directed the City to explain why it had not named Geneve as a defendant earlier in the litigation. In a November 17, 2004 order, the court directed the City to file the supplemental memorandum within 60 days from the date of the order. Again, the court noted that the City did not explain what information it received that caused it to name Geneve as a defendant. (*See* November 17, 2004 order at 2 n.1.) The City filed an additional memorandum on January 18, 2005, but instead of describing the information and addressing the issue of undue delay, the City filed a "Proposed (Revised) Fifth Amended Complaint" that added CERCLA claims under sections 113(f)(3)(B) and 107(a).[1] On January 31, 2005, the City filed a formal motion for leave to file a "Proposed (Revised) Fifth Amended Complaint."

On March 23, 2005, the court denied the City's motion for leave to file a Proposed (Revised) Fifth Amended Complaint as well as the City's previous motions to amend its complaint. The court denied the City's motion for leave

---

[1]The City acknowledged the court's concern regarding the City's possible undue delay in adding Geneve as a defendant, (*see* City's January 18, 2005 brief at 6), but the City failed to describe the information that it received prior to July 26, 2004, the date that it filed its proposed Fifth Amended Complaint, that allowed it to add Geneve as a defendant. The City stated that it received documents on October 22, 2004, and deposed Steven Lapin on December 16, 2004, (*id.* at 6-7), but the City asserted a claim against Geneve prior to October 22, 2004. The City also stated that it received copies of insurance policies in June 2004, (*id.* at 4), but the insurance policies surely are not the "newly-discovered information regarding Geneve's relationship with Amron Corporation and role in the 1996 sale." (*Id.*)

to amend because it determined that adding CERCLA claims under sections 113(f)(3)(B) and 107(a) would be futile. With respect to section 113(f)(3)(B), the court determined that the cost share pilot program contract that the City entered into with the Wisconsin Department of Natural Resources ("WDNR") is not an administratively or judicially approved settlement that resolves the City's CERCLA liability. The court also determined that a separate unsigned administrative settlement agreement between the City and the WDNR did not resolve the City's CERCLA liability. With respect to section 107(a), the court determined that adding the claim would be futile based upon the Seventh Circuit's decisions, *Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235 (7th Cir. 1997), and *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir. 1994).

The court did not address the City's motion for leave to amend with respect to adding the insurance carriers and Geneve as defendants or with respect to various other minor corrections to the complaint. On May 17, 2005, the WDNR signed an environmental settlement agreement entered into by the City and the WDNR. Subsequently, the City filed a motion for leave to file a proposed Sixth Amended Complaint. The City seeks to add the insurance carriers and Geneve as defendants, add a CERCLA contribution claim under section 113(f)(3)(B) based upon the signed settlement agreement, and make

other minor corrections to its complaint. Viacom also moves for a stay of this action pending completion of a state process that the City has initiated under Wis. Stat. § 292.35.

## ANALYSIS

I. City's motion for leave to file a proposed Sixth Amended Complaint

A. Section 113(f)(3)(B) claim

The City seeks leave to add a CERCLA contribution claim under § 113(f)(3)(B) based upon the signed settlement agreement between the City and the WDNR. Under § 113(f)(3)(B), the City may only succeed on a claim for contribution if it "has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(3)(B). The City argues that its signed environmental settlement agreement with the WDNR constitutes a section 113(f)(3)(B) administrative settlement and that it should be permitted to seek contribution from other potentially responsible parties under this provision.

"[S]ection 113(f)(3)(B) [creates] a contribution right only when liability for CERCLA claims, rather than some broader category of legal claims, is resolved." *Consolidated Edison Company of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90, 95 (2d Cir. 2005); *W.R. Grace & Co. v. Zotos Int'l, Inc.*, 2005 WL

1076117, *7 (W.D.N.Y. May 3, 2005) ("Just as a party must be sued under CERCLA before it can maintain a section 113(f)(1) contribution claim, it must settle CERCLA liability before it can maintain a claim under section 113(f)(3).") The City argues that section 113(f)(3)(B) contains no requirement that the liability resolved be CERCLA liability. (City's July 1, 2005 reply memorandum to Viacom's brief at 4, 6, and 12.) But as the Second Circuit noted in *UGI Utilities*, "response action" is a CERCLA-specific term. 423 F.3d at 95-96. Therefore, because section 113(f)(3)(B) creates a CERCLA contribution right only where a party resolves some or all of its liability for a "response action," resolving liability with respect to non-CERLCA claims, such as claims arising under state environmental statutes, does not create a CERCLA contribution right under section 113(f)(3)(B). *See id.*

Applying this principle to the settlement agreement between the City and the WDNR, the court determines that the agreement does not resolve the City's CERCLA liability. The agreement states that in November 1990 the WDNR notified the City that the landfill was required to be in compliance with the provisions of Wisconsin Administrative Code ch. NR 506. (*See* July 1, 2005 Schaefer Aff., Ex. D at 1.) The WDNR did not review the City's work for compliance with the National Contingency Plan ("NCP"), but rather, for compliance with Wisconsin statutes and regulations. (*Id.* at 1-2.) The WDNR

required the City to comply with the Wisconsin Administrative Code NR 700 series as well as the NR 500 series but did not specify compliance with any federal standards. (*Id.* at 2.)

Despite the focus on compliance with state statutes and regulations, the agreement also purports to resolve the City's CERCLA liability to Wisconsin:

> The WDNR and the City have each consented to this Settlement Agreement, entered into pursuant to s. 292.11 and s. 292.31, Stats., to settle potential claims and to resolve the City's liability to the State under CERCLA and state law, except that the City may be required to do additional remedial work under Section III.C.5 of this Settlement Agreement.

(*Id.* at 4-5.) The agreement contains the following covenant not to sue:

> Except as otherwise provided herein, from the effective date of this Settlement Agreement, for as long as the work that is required under this Settlement Agreement is satisfactorily performed in compliance with the terms of this Settlement Agreement and upon payment to WDNR of any amounts due as fees, and after termination of the Settlement Agreement pursuant to the provisions of Section XVI (Termination and Satisfaction), WDNR covenants not to sue the City under ch. 292, Wisconsin Statutes, CERCLA Section 106 or 107, 42 U.S.C. §§ 9606, 9607; or RCRA Section 7003, 42 U.S.C. § 6973; or to require additional investigative work or additional evaluation of remedial alternatives for the Landfill regarding the work satisfactorily performed by the City hereunder.

(*Id.* at 17.) The covenant not to sue should be read in conjunction with the following statement in the agreement's reservation of rights:

> Except as otherwise provided in Section XVII ["Covenant Not To Sue and Waiver"] of this Settlement Agreement, nothing herein shall waive the right of the WDNR to enforce this Settlement

> Agreement as it applies to the work which is agreed to but has not yet been performed, or to take any action pursuant to CERCLA, ch. 292, Wis. Stats., or any other available legal authority. In addition, WDNR reserves the right, following ninety (90) calendar days written notice to the City, to undertake the work that is the responsibility of the City under this Settlement Agreement, to refer the Landfill to the U.S. EPA for action pursuant to CERCLA Section 104 or 106, and to enforce the terms of this Settlement Agreement where WDNR has not undertaken the work, if the City fails to satisfactorily perform the tasks required of it under this Settlement Agreement by the end of the ninety (90) calendar day notice period.

(*Id.* at 15.) According to these provisions, as long as the City *satisfactorily* performs the work specified in the agreement, (*see id.* at 7-9), including unspecified "additional remedial actions to protect human health and the environment," (*id.* at 9), the WDNR covenants not to sue the City under CERCLA. In the agreement, the parties state that they believe the agreement is an administrative settlement that resolves the City's liability to Wisconsin under CERCLA and thereby allows the City to seek contribution pursuant to section 113(f)(3)(B) from potentially responsible parties who have not settled with the City. (*Id.* at 15-16.) Finally, the agreement also contains an important clarification regarding the ability of the United States to sue the City under CERCLA or any other law:

> The parties further expressly recognize that this Settlement Agreement does not represent a waiver of any claim of the United States or the U.S. EPA against the City relating to the Landfill.

(*Id.* at 16.)

The agreement does not resolve the City's CERCLA liability. Like the agreement in *UGI Utilities*, the agreement in this case "leaves open the possibility" that the WDNR may still seek to hold the City liable under CERCLA. 423 F.3d at 97. If, in the WDNR's estimation, the City has not "satisfactorily" performed the work specified under the agreement, WDNR has not waived its right to sue under CERCLA. The agreement in *UGI Utilities* permitted the State of New York "to take any investigatory or remedial action deemed necessary as a result of a significant threat resulting from the Existing Contamination or to exercise summary abatement powers." *Id.* at 96-97. Under both agreements, the state retains the right to sue under CERCLA if it deems it necessary. For the purposes of this order, however, the court assumes arguendo that the "satisfactorily performs" exception does not itself render the agreement insufficient under section 113(f)(3)(B).

Perhaps the best evidence of the fact that the City has not resolved its CERCLA liability under the agreement is the provision stating that the United States and the U.S. EPA have not waived any claim, including a CERCLA claim, against the City relating to the landfill. Because the United States may sue the City under CERCLA, the City cannot argue that it has resolved its CERCLA liability. Clearly, section 113(f)(3)(B) permits a party to resolve its CERCLA

liability to the United States *or* a State. Although the United States Environmental Protection Agency ("EPA") is designated to implement and oversee CERCLA, section 104 provides that certain CERCLA authority may be delegated to the states. *See Zotos*, 2005 WL 1076117, *4; *see* 42 U.S.C. § 9604(d)(1)(A). The *Zotos* court explained,

> [A] state that wishes to carry out actions authorized by CERCLA must make application to, and enter into a contract or cooperative agreement with, the EPA. Absent an express delegation by the EPA, a state has no CERCLA authority. However, where a state receives such delegation, its actions taken pursuant to the cooperative agreement are on behalf of the Federal government. [42 U.S.C.] § 9604(d)(3). Cooperative agreements and the delegation of CERCLA authority are specific to one or more facilities. [42 U.S.C.] § 9604(d)(1)(B).

*Zotos*, 2005 WL 1076117, *4. Furthermore, the EPA has full discretion to determine whether, and the extent to which, CERCLA authority will be delegated to a state. *Id.*; 42 U.S.C. § 9604(d)(1)(B).

In this case, the City has not shown that the EPA delegated authority to the State to enter into a settlement agreement that would resolve the City's CERCLA liability relating to the landfill. The City contends that there are specific and ongoing cooperative agreements between the EPA and the WDNR for the landfill, (City's July 1, 2005 reply memorandum to A.W. Holding's memorandum at 12-13, and note 17), but the only document that the City submits is the WDNR's 1992 Screening Site Inspection Report that references

a 1990 cooperative agreement in which the EPA tasked the WDNR to conduct a screening site inspection of the landfill. (*See* July 1, 2005 Schaefer Aff., Ex. G.) The description of the 1990 cooperative agreement in no way indicates that the WDNR sought authorization from the EPA to enter into a settlement agreement with the City. The City does not submit the 1990 cooperative agreement or any other cooperative agreement between the EPA and the WDNR regarding the landfill, nor does the City suggest that the WDNR applied for and received authority from the EPA to enter into a settlement agreement with the City that would resolve the City's CERCLA liability.

To the contrary, the settlement agreement states that the EPA waives no claim against the City related to the landfill. This provision indicates that the WDNR did not enter into the agreement on behalf of the federal government or pursuant to any CERCLA authority delegated to it by the EPA. *Zotos*, 2005 WL 1076117, *4 ("However, where a state receives such delegation, its actions taken pursuant to the cooperative agreement are on behalf of the Federal government. [42 U.S.C.] § 9604(d)(3)."). "Where a state proceeds on its own authority to identify a remedy and settle with a [potentially responsible party], there is a risk that the EPA will take later actions or select different remedies that could expose the [potentially responsible party] to additional liabilities." *Zotos*, 2005 WL 1076117, *5. In this case, the WDNR entered into a settlement with the City

based upon the authority granted to it pursuant to Wis. Stat. § 292.11(7) or 292.31(3), (*see* July 1, 2005 Schaefer Aff., Ex. D at 4), not under any authority delegated to it by the EPA, and the provision reserving the EPA's right to bring a claim against the City relating to the landfill makes that evidently clear.

The City notes that the court made a finding in its March 23, 2005 order that the settlement agreement "explicitly resolves the City's liability to the State under state law and CERCLA." (March 23, 2005 order at 4.) Indeed, the court described the agreement in those terms because that is what the agreement purported to do. The court, however, did not make any effort to determine whether the unsigned settlement agreement would have served as a basis for a contribution action under section 113(f)(3)(B); instead, the court merely stated the obvious: an unsigned agreement is no agreement at all.

Because the agreement does not resolve the City's CERCLA liability, the court finds that the City's claim under § 113(f)(3)(B) would be futile, and the court denies the City's motion for leave to amend in this respect. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that a court has discretion to deny a motion for leave to amend for undue delay, bad faith, dilatory motive, prejudice, or futility).

B.  Geneve and insurance carrier defendants

The City seeks leave to add Geneve as a defendant.[2] The court analyzes whether the City has unduly delayed in adding Geneve as a defendant and whether any claim against Geneve would be futile. *See Foman v. Davis*, 371 U.S. at 182.

The court will not deny the City's motion for leave to amend on the basis of undue delay. Although the City may have been able to name Geneve as a defendant earlier in the action, Geneve's failure to respond to discovery requests may have contributed to the City's delay. (*See* March 26, 2004 order at 10-12) (describing Geneve's repeated failure to respond to discovery in this action).

Based upon the record before the court, the court does not find that the City's claims against Geneve would be futile. The City seeks to add Geneve as a party based upon Geneve's derivative liability for its subsidiary A.W. Holding.[3] The City alleges that Geneve is the parent and sole shareholder of A.W. Holding; Geneve, not A.W. Holding, controlled the 1996 sale of A.W. Holding's assets; Geneve received approximately $9 million in proceeds from the 1996 sale; following the sale, A.W. Holding no longer performs manufacturing and has few,

---

[2]Aside from alleging a CERCLA contribution claim, the City asserts state law claims for nuisance, unjust enrichment, and negligence against Geneve and the insurer defendants. The court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

[3]At the time of the 1996 asset purchase, A.W. Holding was named Amron Corporation.

if any, assets to respond to the landfill liability which was shifted to it as a result of the 1996 transaction; before and after the 1996 asset sale, some of the officers and directors of Geneve were officers and directors of Amron, L.L.C., and A.W. Holding; and Geneve controlled the sale of A.W. Holding to shift the "purposely undisclosed" liability for the West Avenue Landfill to the asset-less A.W. Holding. (*See* Proposed Sixth Amended Complaint, ¶¶ 27, 34-43.)

The corporate veil should be pierced when the subsidiary corporation is "organized, controlled and conducted" so that it is the "instrumentality" of its shareholder and where the corporate form is used "to evade an obligation, to gain an unjust advantage or to commit an injustice." *Consumer's Co-op of Walworth County v. Olsen*, 419 N.W.2d 211, 214 (Wis. 1988) (quoting *Wiebke v. Richardson & Sons, Inc.*, 265 N.W.2d 571, 573 (Wis. 1978)); *see also United States v. Bestfoods*, 524 U.S. 51 (1998). The City has alleged that Geneve structured the 1996 asset sale so that asset-poor A.W. Holding would retain liability for the landfill, and Geneve would receive the value of A.W. Holding's assets. Geneve argues that the plaintiff's allegations are insufficient to pierce the corporate veil because the plaintiff fails to allege a fraud or wrongdoing on the part of Geneve. (*See* A.W. Holding and Geneve's June 16, 2005 memorandum, Ex. A at 21.) Viewed in the light most favorable to the plaintiff, however, the allegations in the Proposed Sixth Amended Complaint are sufficient to pierce the corporate veil:

the plaintiff alleges that Geneve exercised complete control over A.W. Holding so that A.W. Holding had no separate mind, will or existence of its own and that Geneve used such control to commit an injustice. *See Consumer's Co-op*, 419 N.W.2d at 217-18. The injustice, adequately alleged by the plaintiff, is that Geneve evaded its obligation to pay for its share of liability at the West Avenue Landfill by manipulating A.W. Holding during the 1996 asset sale. Naming Geneve as a defendant is not futile, and the court grants the plaintiff's motion for leave to amend in this respect. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1996) (holding that an amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief may be granted").

No party objects to the City adding the insurance carriers as defendants or to any of the other minor corrections to its complaint. The court, therefore, grants the City's motion for leave to amend its complaint in these respects. The City should file a Sixth Amended Complaint within twenty (20) days that is consistent with this order.

II. Viacom's motion for a stay

Viacom moves for a stay of this action pending completion of a state process that the City has initiated under Wis. Stat. § 292.35. Viacom's motion is based upon the doctrine of primary jurisdiction. *See Arsberry v. Illinois*,

244 F.3d 558, 563 (7th Cir. 2001). Viacom argues that proceeding in two separate forums is unnecessarily costly to the parties and wasteful of the court's resources. In a letter that the court received on July 12, 2005, counsel for A.W. Holding and Geneve states that the entities oppose the motion for a stay because they want to avoid any more delay in this action. The City does not object to a stay provided that all of the parties, including A.W. Holding and Geneve, agree to participate in the umpire process and abide by its outcome. (City's July 1, 2005 reply memorandum to Viacom's brief at 2 n.3, 14.) The City also contemplated that it would return to federal court to resolve related matters, such as an award of attorney fees, costs and RCRA relief. (*Id.*)

Because this action has already been pending for some time and because the court doubts that it or the parties will realize any cost savings by staying this action, the court denies Viacom's motion for a stay. The court, however, will allow the parties some flexibility in setting the schedule that will govern the remainder of this action. The court directs counsel for the parties to confer and submit a proposed scheduling order for the court's signature. At a minimum, the scheduling order should contain dates for the close of discovery and a final deadline for any dispositive motions.

Accordingly,

IT IS ORDERED that Viacom's motion for a stay be and the same is hereby DENIED; the parties should confer and file a proposed scheduling order within twenty (20) days from the date of this order;

IT IS FURTHER ORDERED that the City's motion for leave to file a proposed Sixth Amended Complaint be and the same is hereby DENIED in part and GRANTED in part; the City shall file a Sixth Amended Complaint that is consistent with this order within twenty (20) days from the date of this order.

Dated at Milwaukee, Wisconsin, this   31st   day of October, 2005.

BY THE COURT:

  s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge